James Arnold BAUGHMAN *v.* STATE of Arkansas

CA 02-631 110 S.W.3d 740

Supreme Court of Arkansas
Opinion delivered May 1, 2003

4

*Taylor Law Firm*, by: *W.H. Taylor*; and *Bradley L. Karren*, for appellant.

*Mike Bebee*, Att'y Gen., by: *Jeffrey A. Weber*, Ass't Att'y Gen., for appellee.

W H. "DUB" ARNOLD, Chief Justice. This appeal, by appellant James Arnold Baughman, is from a judgment of conviction for one count of capital murder and one count of second-degree murder from Benton County Circuit Court. Baughman was sentenced to life in prison, without the possibility of parole; and, a twenty-year sentence on the second-degree murder conviction. Baughman appeals on multiple grounds which include: (1) whether the trial court erred in denying Baughman's motion for direct verdict; (2) whether the trial court erred when it denied Baughman's motion for change of venue; and (3) whether the trial court erred when it denied Baughman's motion to submit extended jury questionnaires. We conclude that all points raised are without merit, and affirm.

Appellant James Baughman traveled to Arkansas from South Carolina with Rose Cushman on or about October 30, 1999. While in Arkansas, Baughman murdered Joann Kneece and Floyd Suggs, for approximately $40,000. Etheridge Kneece, Joann Kneece's estranged husband, hired Baughman, Cushman, and two other individuals to carry out the murders. After the murders took place, Baughman and Cushman hid the victims' bodies in a remote area in southwest Missouri.

On October 26, 2001, Baughman was tried before a jury in Benton County, Arkansas, and concluded with a jury verdict on

November 9, 2001. The jury found appellant Baughman guilty of capital murder for the death of Joann Kneece and guilty of second-degree murder for the death of Floyd Suggs. Baughman was sentenced to life in prison, without the possibility of parole, and to twenty years in the Arkansas Department of Correction.

## Sufficiency of the Evidence

When a defendant makes a challenge to the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the State. *Engram v. State*, 341 Ark. 196, 15 S.W.3d 678 (2000); *Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999); *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998); *Bailey v. State*, 334 Ark. 43, 972 S.W.2d 239 (1998). It is well settled that a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Williams Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002); *Smith v. State*, 346 Ark. 48, 55 S.W.3d 251 (2001) (citing *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995)). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Smith, supra*. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Smith, supra*. Only evidence supporting the verdict will be considered. *Smith, supra*.

Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Sublett v. State*, 337 Ark. 374, 989 S.W.2d 910 (1999). Such a determination is a question of fact for the fact-finder to determine. *Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993). The credibility of witnesses is an issue for the jury and not the court. *Phillips v. State*, 344 Ark. 453, 40 S.W.3d 778 (2001). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Phillips, supra*. We will disturb the jury's determination only if the evidence did not meet the required standards, thereby leaving the jury to speculation and conjecture in reaching its verdict. *Philips, supra*. When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it.

*Phillips, supra.* Additionally, the longstanding rule in the use of circumstantial evidence is that the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused to be substantial, and whether it does is a question for the jury. *Gregory v. State*, 341 Ark. 243, 15 S.W.3d 690 (2000).

The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's. *Chapman v. State,* 343 Ark. 643, 38 S.W.3d 305 (2001); *Bell v. State,* 334 Ark. 285, 973 S.W.2d 806 (1998). We have also held that a defendant's improbable explanation of suspicious circumstances may be admissible as proof of guilt. *Chapman, supra; Goff v. State,* 329 Ark. 513, 953 S.W.2d 38 (1997); *Thomas v. State,* 312 Ark. 158, 847 S.W.2d 695 (1993).

In this case, Baughman argues that the trial court erred by denying his motion for directed verdict. However, there was substantial evidence of Baughman's guilt. The State presented both physical and circumstantial evidence linking Baughman to the murders of Joann Kneece and Floyd Suggs; therefore, the trial court's decision was correct.

At trial, Rose Cushman testified that she and Baughman traveled from South Carolina to Arkansas in Cushman's van, in order to carry out the murder of Floyd Suggs. Baughman and Cushman were also to convince Joann Kneece to remain in Arkansas so that she would not be able to testify against Etheridge Kneece, her estranged husband, in a criminal matter pending in South Carolina. Cushman further testified that Baughman told her that she would have no part in the murder of Suggs, but he intended to murder Suggs like Mr. Kneece had instructed.

Additionally, Cushman testified that after arriving in Arkansas she and Baughman searched for Ms. Kneece and eventually contacted her. Once they had made contact with Ms. Kneece, Baughman and Cushman disclosed to her that they were in Arkansas to warn her of threats made by Mr. Kneece. Baughman and Cushman, then, followed Ms. Kneece to her home that she shared with Floyd Suggs.

Once at Ms. Kneece's home, Baughman began an argument with Ms. Kneece and Mr. Suggs. While arguing, Baughman pulled out a gun and a metal club. Baughman attacked Ms. Kneece with the metal club until she collapsed. When Ms. Kneece tried to get up, Baughman repeatedly struck her with the club. Baughman also struck Mr. Suggs with the club. Suggs fell to the ground and laid motionless. Cushman testified that Baughman also stabbed Mr. Suggs several times and tried to cut off his head, but was unsuccessful. Cushman testified that Baughman said, "If I brought my machete, I could have done it."

After the murders, Baughman and Cushman draped the bodies in blankets and trash bags, loaded the bodies in the van they drove from South Carolina, and disposed of the bodies in Missouri. Cushman testified that she drove the van, and Baughman followed in Ms. Kneece's red Ford Taurus.

This testimony, absent the statutory requirement that an accomplice's testimony be corroborated, was certainly sufficient to sustain Baughman's murder convictions. Therefore, the question becomes whether Rose Cushman's testimony was sufficiently corroborated by other evidence. Ark. Code Ann. § 16-89-111 (1987).

 Arkansas Code Annotated § 16-89-111(e)(1) (1987) provides that a person cannot be convicted of a felony based upon the testimony of an accomplice, unless that testimony is "corroborated by other evidence tending to connect the defendant with the commission of the offense." Corroboration is not sufficient if it merely establishes that the offense was committed and the circumstances thereof. *McGhee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999). The test for determining the sufficiency of the corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Marta v. State*, 336 Ark. 67, 983 S.W.2d 924 (1999); *Meeks v. State,* 317 Ark. 411, 878 S.W.2d 403 (1994). Circumstantial evidence may be used to support accomplice testimony, but it, too, must be substantial. *Id.* Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Id.*

Other evidence that independently establishes Baughman's guilt is that of Associate Medical Examiner Dr. Charles Kokes. Dr. Kokes testified that Mr. Suggs died as a result of being stabbed, having his throat cut, and to a lesser extent, blunt force trauma. Dr. Kokes also testified that Ms. Kneece died of blunt force trauma.

Officer David Slaton of the Berryville Police Department also testified to facts that could independently connect Baughman with the murders. Officer Slaton testified that when Baughman was detained in Berryville, Arkansas, he was standing by Ms. Kneece's red Ford Taurus. Officer Slaton testified that Baughman told him that the car was his. Officer Slaton further testified that Baughman had the keys to the Taurus in his pocket. Moreover, he had the keys to the van, which Ms. Cushman was driving, in his pocket. Inside the van that Baughman and Ms. Cushman drove to Arkansas were various items of evidence connecting Baughman to the murders. These items included bloody clothing, a purse, checkbook, and jewelry belonging to Joann Kneece; and, Floyd Suggs' wallet. Further, a watery blood combination was dripping down onto the step plate on the van.

Additionally, Mary Robinette, a forensic biologist at the Arkansas State Crime Lab, testified that she performed approximately twenty-five DNA examinations in this case. Specifically, Robinette testified that blood found on Baughman's right boot was consistent with Floyd Suggs; and, blood found on Baughman's left boot contained a mixture of blood that was consistent with the DNA profile of Joann Kneece and Floyd Suggs.

██ ██ Therefore, the testimony provided by Rose Cushman that Baughman killed both Ms. Kneece and Mr. Suggs, coupled with the testimony of Associate Medical Examiner Dr. Kokes and Officer Slaton makes clear that there was substantial evidence to support both murder convictions. Accordingly, we hold that there was sufficient evidence not only to affirm the denial of the motion for directed verdict, but also, to affirm the conviction and sentence imposed upon Baughman.

### Change of Venue

Baughman's second point on appeal is that the trial court erred by denying his motion to change venue. This argument is rejected because Baughman was tried before an unbiased jury.

██ ██ A change of venue should be granted only when it is clearly shown that a fair trial is not likely to be had in the county. *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000); *Bell v. State*, 324 Ark. 258, 920 S.W.2d 821 (1996). This requires a movant to show that there is countywide prejudice against him. *Foster v. State*, 275 Ark. 427, 631 S.W.2d 7 (1982). A defendant is not entitled to jurors who are "totally ignorant of the facts surrounding the case, as long as they can set aside any impression they have formed and render a verdict solely on the evidence at trial." *Rankin v. State*, 329 Ark. 379, 396, 948 S.W.2d 397, 406 (1997) (quoting *Gardner v. State*, 296 Ark. 41, 52, 754 S.W.2d 518, 523 (1988)). The standard of reviewing the denial of a motion for change of venue is whether there was an abuse of discretion by the trial court. *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998).

In the present case, we cannot say that the trial court abused its discretion in denying the change of venue. The trial court took Baughman's motion under advisement until after jury selection was completed. The trial court did not address the motion until voir dire was completed, and the trial court stated, "I am satisfied that this jury selection process has produced twelve jurors and two alternates who are unbiased and will approach this case in objective fashion." The trial court then denied the motion.

██ Baughman's only argument is that the trial court improperly centered its own awareness of local conditions in denying the motion. Baughman does not argue that any of the jurors were biased. The trial court correctly waited to hear from the actual jurors to conclude that Baughman would receive a fair trial before making its ruling. Therefore, the trial court did not abuse its discretion and is affirmed.

### Extended Jury Questionnaires

Baughman's final point on appeal is that the trial court erred by denying his motion to submit an expanded juror questionnaire

prior to voir dire. This argument is unmeritorious because no prejudice resulted from the decision.

 ██ Arkansas Rule of Criminal Procedure 32.2 provides for voir dire examination of potential jurors and specifically grants the trial judge the power to "permit such additional questions by the defendant or his attorney and the prosecuting attorney as the judge deems reasonable and proper." We have consistently interpreted that Rule as providing trial judges with wide latitude in conducting and monitoring voir dire. In *Henry v. State*, 309 Ark. 1, 828 S.W.2d 346 (1992), we held that the extent and scope of voir dire is generally within the sound discretion of the trial court, and that we will not reverse absent a clear abuse of this discretion. *See also Bryant v. State*, 304 Ark. 514, 803 S.W.2d 546 (1991); *Johnson v. State*, 298 Ark. 617, 770 S.W.2d 128 (1989). Furthermore, in *Heffernan v. State*, 278 Ark. 325, 645 S.W.2d 666 (1983), we held that sequestration of the jury for purposes of voir dire is also within the discretion of the trial court.

Here, the trial court denied Baughman's motion for an expanded juror questionnaire as being untimely. The expanded juror questionnaire was submitted only a few days before jury selection was to begin. Arkansas Rules of Criminal Procedure 32.1 states:

> The circuit court shall require members of petit jury panels to complete written questionnaires setting forth the following information:
>
> (i) age;
>
> (ii) marital status;
>
> (iii) extent of education;
>
> (iv) occupation of juror and spouse; and
>
> (v) prior jury service.
>
> Upon request, such questionnaires shall be made available by the clerk of the court to the defendant or his counsel and the prosecuting attorney. Upon a showing of good cause, additional information may be furnished regarding jurors by order of the court.

Ark. R. Crim. P. 32.1 (2000). Arkansas Rule of Criminal Procedure 32.2 states:

(a) Voir dire examination shall be conducted for the purpose of discovering bases for challenge for cause and for the purpose of gaining knowledge to enable the parties to intelligently exercise peremptory challenges. The judge shall initiate the voir dire examination by:

(1) identifying the parties; and

(ii) identifying the respective counsel; and

(iii) revealing the names of those witnesses whose names have been made known to the court by the parties; and

(iv) briefly outlining the nature of the case.

(b) The judge shall then put to the prospective jurors any question which he thinks necessary touching their qualifications to serve as jurors in the cause on trial. The judge shall also permit such additional questions by the defendant or his attorney and the prosecuting attorney as the judge deems reasonable and proper.

Ark. R. Crim. P. 32.2 (2000).

 Baughman contends that he is entitled to relief because there is no timeliness requirement in either rule 32.1 or 32.2 of the Arkansas Rules of Criminal Procedure. However, the trial court did not err in denying his motion to submit an expanded juror questionnaire because the trial court is given wide latitude involving voir dire. Further, Baughman has failed to show how the trial court's ruling was prejudicial. Baughman was not prevented from asking any relevant question that was contained in the proposed questionnaire when he conducted his examinations of the prospective jurors. Therefore, we hold that relief is denied.

*Rule 4-3(h)*

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for adverse rulings objected to by Baughman, but not argued on appeal, and no error is found.

In sum, in light of the physical and substantial circumstantial evidence presented to the jury, who determined his guilt and recommended his sentence, we cannot say that the trial court committed error in this case. Accordingly, we find no reversible error in the trial court's rulings. We affirm the trial court on all points and Baughman's judgment of conviction.

Affirmed.